IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LISA MICHELLE WALSH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00552-O-BP |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Lisa Walsh applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Walsh appeals. Finding no reversible error, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

I.  BACKGROUND

   A.  Procedural Background

In December 2018, Walsh applied for DIB under SSA Title II, claiming disability since February of that year. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 13-1 at 154-55. She specified seven medical conditions that limit her ability to work: diabetes, high blood pressure, hypertension, depression, nephropathy, sleep apnea, high cholesterol, and anxiety. Tr. 179. The Commissioner denied her application initially and upon reconsideration. *Id.* at 70, 87, 97. Walsh challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") (*id.* at 112),

who conducted a telephonic hearing (*id.* at 29-54) and later affirmed the Commissioner's denial in an eleven-page decision. *Id.* at 10-20.

After the Social Security Appeals Council denied Walsh further administrative review (*id.* at 1), she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She claims she is disabled and thus entitled to DIB. ECF No. 1.

### B. Factual Background

Walsh emphasizes a March 2019 appointment she had with Deborah Gleaves, Ph.D., who practices with the Medical Testing and Examinations Center of Fort Worth. Tr. 443-449. Upon referral, Dr. Gleaves conducted a forty-minute clinical interview and mental status examination, during which she diagnosed Walsh with three mental disorders and opined on Walsh's functional capacity. *See id.*

During the interview, Walsh told the doctor she is disabled because of depression and anxiety. *Id.* at 444. When she was between five- and six-years old, her babysitter's son sexually assaulted her repeatedly. *Id.* at 444-45. Her mother also physically abused her. *Id.* at 445. In her twenties, Walsh grew angry and suicidal, and she was diagnosed with bipolar disorder. *Id.* She managed working most her life as a land surveyor for a civil engineering company before leaving the job in 2018 due to depression and poor physical health. *Id.* Although she is no longer suicidal, she feels "depressed all day everyday" and "worthless and helpless at times," and she has "difficulty having interest in doing anything." *Id.*

Walsh also described the discomfort she experiences anytime she leaves her home: "It's getting to where I don't want to leave the house. When I do[,] I get real bad anxiety and I can't

breathe. I just break down crying." *Id.* at 444. For example, she "felt very stressed about leaving her house" to attend her appointment with Dr. Gleaves, and so she generally "stays at home all the time unless forced to get out for doctor's appointments." *Id.* at 444, 446. Even though she takes medication for her psychological problems, she reported still having "significant symptomology especially fearfulness and anxiety when she leaves her home." *Id.* at 446.

At home, Walsh lives with her spouse and adult son, and she remains relatively independent in her daily activities. *Id.* She watches TV and reads; can use a cell phone to text and access the internet; and can tell time and count money. *Id.* Her spouse and son assist her with housework, grocery shopping, and cooking. *Id.* She has a "good relationship with her spouse and with her grown children;" however, she has "no friends with whom she interacts at this time." *Id.*

Walsh was "obviously depressed." *Id.* at 444. But Dr. Gleaves noted she "has not received consistent outpatient treatment or had any psychiatric hospitalizations." *Id.* at 446. She "only received counseling briefly as a child for the sexual abuse" and otherwise "received no further treatment" for that incident. *Id.* at 445-46. And during the mental status exam, Walsh expressed her thoughts in a "coherent, logical and relevant manner"; demonstrated average intelligence; and had "some mild difficulty with attention, concentration and short term memory." *Id.* at 446-47.

Dr. Gleaves diagnosed Walsh with major depressive disorder, post-traumatic stress disorder, and other specified anxiety disorder before then opining on Walsh's functional capacity:

> [Walsh] is able to understand, carry out and remember 1 and 2 step commands and will have moderate difficulty with complex instructions. She will have moderate difficulty sustaining concentration and persisting in work related activity at a reasonable pace. She will have marked difficulty maintaining effective social interaction on a consistent and independent basis with supervisors, coworkers and the public and in dealing with normal pressures in the competitive work setting due to her depression and anxiety as well as fearfulness.

*Id.* at 448. According to Walsh, Dr. Gleaves's opinion should render her disabled under the SSA. ECF No. 18. But as discussed later, the ALJ found this opinion unpersuasive. *See* Tr. 18.

## II.     STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.*

§ 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.  ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 10-20. The ALJ found Walsh has: (1) not engaged in substantial gainful activity since February 2018; (2) several severe impairments, including depression, post-traumatic stress disorder, diabetes mellitus, obesity, obstructive sleep apnea, osteoarthritis in the hands, and neuropathy; and (3) no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 12-14. He then determined Walsh's RFC:

> [Walsh] has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except [Walsh] can handle, finger and feel with the bilateral upper extremities. Occasional climbing, balancing, stooping, kneeling, crouching and crawling. [Walsh] can understand, remember and carryout detailed, but not complex tasks and instructions.

*Id.* at 14. Using his RFC determination, the ALJ completed steps four and five, reasoning Walsh (4) could not perform her PRW as a surveyor, but (5) could perform jobs existing in significant numbers in the national economy, including light cleaner, office helper, and sorter. *Id.* at 18-19. Because of the step-five finding, the ALJ concluded Walsh was not disabled and thus not entitled to DIB. *Id.* at 20.

Walsh does not challenge the ALJ's findings at steps one through three, but she challenges his RFC determination in raising two issues for the Court's review: (1) "The ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because he failed to properly evaluate the opinion of consultative examiner Deborah Whitehead Gleaves, Ph.D."; and (2) "The ALJ provided no analysis of Plaintiff's subjective complaints." ECF No. 18 at 5. The Court should overrule both issues.

### A. The ALJ properly evaluated Dr. Gleaves's medical opinion in determining Walsh's RFC.

"The ALJ is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). He bases his determination "on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The Court must defer to his RFC determination if substantial evidence supports it. *Perez*, 777 F.2d at 302.

#### 1. RFC and Medical Opinions

The ALJ "may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). For DIB applications filed after March 27, 2017 (like Walsh's), 20 C.F.R. § 404.1520c governs how the ALJ considers medical opinions. *See* Tr. 154-55. The ALJ must "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions" in an applicant's case record. § 404.1520c(b). His articulation must attend to several factors, of which the "most important" are an opinion's "supportability" and "consistency." *Id.* § 404.1520c(b)(2).

Supportability depends on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." *Id.* § 404.1520c(c)(1). Consistency orients the opinion "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). The more supported and consistent a medical opinion is, the more persuasive it is. *Id.* § 404.1520c(c)(1)-(2). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). But he need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.* § 404.1520c(a).

### 2. The ALJ found Dr. Gleaves's opinion unpersuasive.

The ALJ referenced Dr. Gleaves's clinical interview and mental status exam throughout his decision. Tr. 13-18. And he inserted nearly verbatim the doctor's opinion on Walsh's functional capacity before explaining in three sentences why he found it unpersuasive:

> I find Dr. Gleaves's opinion is not persuasive because it is vague as to the meaning of moderate or marked limits. In addition, her opinion that [Walsh] would have marked limitations with respect to social interactions is not explained. It is also not consistent with the medical records which do not document substantial interpersonal conflicts or difficulties.

Tr. 18. Walsh submits this explanation inadequately explains the supportability and consistency factors under 20 C.F.R. § 404.1520c, thus constituting legal error. *See* ECF No. 18 at 14-17.

### 3. The ALJ applied proper legal standards in explaining Dr. Gleaves's opinion was unpersuasive, and substantial evidence supports his explanation.

The ALJ was not required to adopt Dr. Gleaves's opinion. 20 C.F.R. § 404.1520c(a); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) (stating "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion"). He was required, however, to explain how persuasive he found it, with attention to the consistency and supportability factors in 20 C.F.R. § 404.1520c(b)(2).

There is "little authority discussing what an ALJ must do to adequately 'explain' supportability and consistency or what happens when those discussions are missing." *See Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). Certainly, the ALJ errs if he "fail[s] to discuss, cite, or even mention" a medical opinion. *William T. v. Comm'r of Soc. Sec.*, No. 6:18-cv-0055-BU, 2020 WL 6946517, at *7 (N.D. Tex. Nov. 25, 2020) ("[T]he regulations do not appear to contemplate a scenario where an ALJ fulfills his legal obligation to consider a medical opinion without also explicitly discussing how he did so."). As Walsh observes (ECF No. 18 at 15), conclusory one-sentence explanations likely fall short too.

8

*See Bridges v. Comm'r of Soc. Sec.*, No. 4:20-cv-89-DMB-DAS, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021) ("Stating that a provider's records 'contained no objective findings,' to support an opinion, without any further explanation, is meaningless boilerplate."), *rec. adopted sub nom. Bridges v. Saul*, 2021 WL 2907892 (N.D. Miss. July 9, 2021).

There have never been formalistic rules governing how an ALJ must articulate his decision. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). At a minimum, the ALJ's explanation must permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) (citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007)), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). Here, the ALJ discussed Dr. Gleaves's findings and opinion throughout his decision, and he provided a three-sentence explanation for their non-persuasiveness, unlike the ALJs in *William T.* and *Bridges*, respectively. His explanation permits meaningful judicial review of the supportability and consistency factors.

The third sentence in the ALJ's explanation adequately addresses consistency because Dr. Gleaves's opinion on Walsh having marked difficulty maintaining effective social interaction is inconsistent with substantial evidence the ALJ cited in finding Walsh has only mild limits in those areas. *See* Tr. 13, 18; 20 C.F.R. § 404.1520c(c)(2). As the ALJ observed earlier in his decision, Walsh gets along well with authority figures and spends time monthly visiting others. *See* Tr. 13 (citing Tr. 200, 202). She shops for food and essentials almost weekly. *Id.* (citing Tr. 199). Even Dr. Gleaves noted Walsh's "good relationship with her spouse and with her grown children." *Id.* (citing Tr. 446).

Although Walsh reported discomfort leaving home, a progress note dated September 2019 (about six months after her appointment with Dr. Gleaves) references Walsh planning a week-long vacation to Tennessee. *See id.* (citing Tr. 573); *see also id.* at 570. The ALJ explained Walsh "has

9

received very limited treatment for her mental health conditions" (*id.* at 15), noting Walsh "reported to Dr. Gleaves she has not received any further treatment (counseling) since she was a child for sexual assault." *Id.* at 17 (referencing Tr. 445-46). Indeed, Dr. Gleaves documented Walsh's brief counseling, her inconsistent outpatient treatment, and lack of psychiatric hospitalizations. *Id.* at 446.

The ALJ also found persuasive the medical opinions of two State Agency Psychological Consultants ("SAPCs") (*id.* at 17), who found Walsh "Not significantly limited" in her ability to "ask simple questions or request assistance"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and "maintain socially appropriate behavior and to adhere to basic standard of neatness and cleanliness." *Id.* at 66, 84. They also found Walsh only "Moderately limited" in interacting appropriately with the public. *Id.* The SAPCs explained Walsh can "interact adequately with co-workers and supervisors" (*id.* at 67, 84) and "set realistic goals or make plans independently of others." *Id.* at 84. Substantial evidence thus supports both the ALJ's finding that Walsh has only mild interaction limits and, by extension, his explanation that Dr. Gleaves's contrary opinion is inconsistent with the record.

The ALJ's first and second sentences of his explanation address the supportability factor. *Id.* at 18. An opinion's supportability partially turns on its accompanying explanation, *see* 20 C.F.R. § 404.1520c(c)(1), and the second sentence observes Dr. Gleaves did not explain what she means by Walsh having "marked" interaction limits. *See* Tr. 448. Walsh insists the second sentence is conclusory because the doctor "very clear[ly] noted [Walsh's] history of sexual trauma, social avoidance, lack of motivation, lack of relationships except for with her children and spouse, and her diagnoses of depression, PTSD, and anxiety." ECF No. 18 at 16.

Walsh is correct that Dr. Gleaves noted these items. So did the ALJ (*see* Tr. 15-16), who additionally noted the following substantial evidence from Dr. Gleaves's findings: Walsh's good relationship with her spouse and children; minimal treatment; average intelligence; independence in daily activities; and coherent, logical, and relevant thought processing. *See id.* at 13-17 (referencing Tr. 446-47). The ALJ found this latter evidence, particularly the first item, as probative of "mild" rather than "marked" interaction limits. *Id.* at 13. Thus, what is missing from Dr. Gleaves's opinion is an explanation of how she found "marked" rather than "mild" interaction limits. *See id.* at 18, 448. Without such explanation, the meaning of "marked" is, as the ALJ's first sentence explains, vague.

To the extent the ALJ did not expressly state the above, Walsh's argument challenging the adequacy of the ALJ's explanation is not without some merit. *See Moore*, 2021 WL 754833, at *3 (stating 20 C.F.R. § 404.1520c requires more than rejection by implication); *William T.*, 2020 WL 6946517, at *6 (stating the ALJ must "specifically explain" the supportability and consistency factors). But because the ALJ's explanation addresses the consistency and supportability factors, permits the judicial review set forth above, and is supported by substantial evidence, the undersigned finds no error.

### 4. The Harmless Error Rule

Even if the ALJ had erred in the depth of his explanation, the "harmless error rule" counsels against reversal unless the error caused harm. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where "the substantial rights of a party have been affected." *Id.* By contrast, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of

time." *Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required.").

If the ALJ erred in not adequately explaining why Dr. Gleaves's opinion was unpersuasive, there is no indication the error harmed Walsh's substantial rights. And it is inconceivable the ALJ would have reached a different disability decision had he provided a more expansive explanation. First, the ALJ fully considered Dr. Gleaves's opinion before finding it unpersuasive. He summarized Dr. Gleaves's interview notes, mental exam findings, and diagnoses rendered. Tr. 15-16. He restated almost verbatim her opinion on Walsh's functional capacity. *Id.* at 18. And he separately cited Dr. Gleaves five times in four paragraphs analyzing the evidence. *Id.* at 13-14. Perhaps he could have written more, but it appears certain that a more extensive explanation would not have changed his conclusion that Dr. Gleaves's opinion did not persuade him. The harmless error rule counsels against reversal in such an instance. *Mays*, 837 F.2d at 1364.

Second, Dr. Gleaves did not state Walsh was disabled, and her opinion does not compel a disability finding. *See* Tr. 448. At worst, Dr. Gleaves found Walsh had two moderate limitations relating to her abilities to understand and concentrate, and one marked limitation relating to social interaction. *See id.* There is no indication such a combination rendered Walsh disabled. Walsh would define "marked" and "moderate" just as these terms are defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 ("Mental Disorders"). ECF No. 18 at 13-14. Section 12.00, which an ALJ ordinarily would consult during step three of his evaluation process, contains "functional criteria" to assess the four "areas of mental functioning a person uses in a work setting." § 12.00(A)(2)(b) ("Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself").

The ALJ "evaluate[s] the effects of [a claimant's] mental disorder on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." *Id.* § 12.00(F)(2). To be disabled, the claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b).

Dr. Gleaves opined Walsh had no extreme limitations and just one marked limitation. As this combination does not trigger a disability finding under § 12.00, there is no reason to believe the ALJ would have found Walsh disabled even had he found the doctor's opinion fully persuasive. *See also* 20 C.F.R. § 404.1520a(c)(4) ("Evaluation of mental impairments") (stating only the existence of an extreme limitation "represents a degree of limitation that is incompatible with the ability to do any gainful activity"). Even Walsh's attorney acknowledged during the administrative hearing that Dr. Gleaves "limited [Walsh] to simple work only." Tr. 35. Implicit in counsel's statement is recognition that Walsh can still perform simple work, and a claimant is only disabled if she is unable to "engage in *any* substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

Citing Social Security Ruling 85-15, Walsh insists the ALJ committed harmful error because Dr. Gleaves's opinion would, "if properly credited," render her disabled. ECF No. 18 at 17. But any claimant could argue they would be entitled to benefits if the ALJ had just properly credited the evidence. It remains the ALJ's domain to weigh the evidence, including medical opinions. *See Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *3 (5th Cir. June 29, 2022) ("As factfinder, the ALJ was free to evaluate and weigh the totality of the evidence in the record in reaching [his] conclusion."). SSR 85-15 also is unhelpful because it does not discuss the terms "marked" and "mild" and is otherwise a non-binding authority. *See* SSR 85-15, 1985 WL 56857

(Jan. 1, 1985); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (stating the "Social Security Administration's rulings are not binding on this court"). Any error here is thus harmless.

### B.     The ALJ properly analyzed Walsh's subjective complaints.

The ALJ evaluates a claimant's subjective complaints using a two-part process. *Salazar v. Chater*, 74 F.3d 1236, 1995 WL 783347, at *1 (5th Cir. Nov. 27, 1995) (citing 20 C.F.R. § 404.1529). First, "medical signs or laboratory findings" must show the claimant has a "medically determinable impairment that could reasonably be expected to produce [her] symptoms, such as pain." 20 C.F.R. § 404.1529(b). Second, the ALJ must "evaluate the intensity and persistence of [her] symptoms so that [he] can determine how [her] symptoms limit [her] capacity for work." *Id.* § 404.1529(c)(1). Here, the ALJ found the first part satisfied, but during the second part found an inconsistency between Walsh's subjective complaints and the record as a whole:

> After careful consideration of the evidence, I find that [Walsh's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Walsh's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 15. Walsh contends the ALJ "provided no analysis" for his part-two finding, rendering it conclusory and unsupported. ECF No. 18 at 18-19. For part two, the ALJ considers "all of the available evidence," § 404.1529(c)(1), including medical opinions and evidence of factors relevant to a claimant's symptoms. *Id.* § 404.1529(c)(3). Walsh submits the ALJ erred by making "no comparison" between her complaints and the evidentiary items contemplated by § 404.1529(c)(3). *See* ECF No. 18 at 18. There is no apparent basis for her arguments, however, because the ALJ's decision shows he considered a substantial amount of such evidence.

For example, one factor the ALJ considered was "Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [her] pain or other symptoms." § 404.1529(c)(3)(v); *see also Bergeron v. Astrue*, No. H-08-2851, 2009 WL 3756915, at *6 (S.D.

Tex. Nov. 5, 2009) (applying 20 C.F.R. § 404.1529(c)) (finding claimant's subjective complaints unsupported where "the records show[ed] very limited treatment for a mental disorder since the alleged onset date"). Accordingly, the ALJ here explained—and it appears undisputed—that Walsh "has received very limited treatment for her mental health conditions" and has similarly "received limited treatment for her physical conditions." Tr. 15; *see* ECF No. 18 at 18-19; ECF No. 20 at 3-4. The ALJ referenced Dr. Gleaves's appointment in observing "the evidence does not indicate [Walsh] is receiving treatment from a psychiatrist or psychiatric hospitalization" and "she has not received any further treatment (counseling) since she was a child for sexual assault." Tr. 17 (referencing Tr. 446); *see also Coats v. Colvin*, No. 3:12-cv-4968-M-BK, 2013 WL 6052879, at *5 (N.D. Tex. Oct. 11, 2013) ("Considering the relative infrequency of Plaintiff's doctor visits and the conservative treatment of her anxiety, the ALJ's failure to include in the RFC any limitations based on such evidence is not error."), *rec. adopted*, 2013 WL 6052879, at *1 (N.D. Tex. Nov. 14, 2013).

Another factor is the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i); *see also Leggett*, 67 F.3d at 565 n.12 ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status."). The ALJ described Walsh's daily activities earlier in his decision where he found Walsh had non-disabling limitations relating to her abilities to understand, interact, concentrate, and adapt. *See* Tr. 13-14. Walsh remained "independent with her basic activities of daily living." *Id.* at 14 (citing Tr. 446). She could: prepare meals, pay bills, and ride in a car; shop and use her cellphone; spend time with family and friends; and watch TV, manage funds, and access the internet. *See id.* at 13 (citing Tr. 198-200, 446). And again, although Walsh complained of discomfort anytime she leaves home, the "September 2019 treatment notes indicate [Walsh] was going out of town for a week." *Id.* (citing Tr. 573); *see also*

*Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) ("[T]he inconsistencies between [plaintiff's] testimony about his limitations and his daily activities were quite relevant in evaluating his credibility.").

The ALJ also considered the medical opinions of record. 20 C.F.R. § 404.1529(c)(3). The ALJ cited and discussed five medical opinions: two State Agency Medical Consultants' opinions; the two SAPCs' opinions; and Dr. Gleaves's opinion. *See* Tr. 17-18 (citing Tr. 63-67, 80-85). None of these concluded that Walsh was disabled. *See id.*; *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding substantial evidence supported RFC determination partly where "no physician who examined [the claimant] pronounced her disabled"); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (finding claimant's complaints not credible partly where "[n]o physician stated that [the claimant] was physically disabled").

The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Here, the ALJ's decision shows reliance on substantial evidence under 20 C.F.R. § 404.1529(c) in discrediting Walsh's complaints. Accordingly, the Court should defer and overrule Walsh's second issue.

## IV. CONCLUSION

The Court's review remains highly deferential to the ALJ. *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022). Because the record reflects the ALJ applied proper legal standards and reached a decision that substantial evidence supports, Judge O'Connor should **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 7, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE